UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TODD PERRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OROFINO, a political subdivision of the State of Idaho, SEAN M. SIMMONS, individually and in his former capacity as Mayor of the City of Orofino, and RYAN E. SMATHERS, individually and in his former capacity as Administrator for the City of Orofino,<br><br>　　　　　Defendants. | Case No. 3:24-cv-00598-REP<br><br><br>**MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Pending before the Court are Defendants' Motion for Judgment on the Pleadings (Dkt. 16) and Defendants' Motion to Strike (Dkt. 20). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 10.) For the reasons set forth below, Plaintiff's federal claims fail as a matter of law. The Court will dismiss these claims and remand Plaintiff's state claims back to state court.

## PROCEDURAL HISTORY

This case arises out of Plaintiff Todd Perry's termination from public employment. Mr. Perry was a long-time municipal employee who started working for the City of Orofino in October 1995. Compl. ¶ 20 (Dkt. 1-2). In 2008, he was appointed to be the City of Orofino Building and Code Enforcement Official. *Id.* ¶¶ 22-25. He served in this role for over fifteen years. *Id.* ¶ 26. In August of 2023, Mr. Perry received his first disciplinary action in the form of

**MEMORANDUM DECISION AND ORDER – PAGE 1**

a verbal warning that was "made in response to complaints allegedly made by members of the public about Plaintiff's performance as Building and Code Enforcement Official." *Id.* ¶¶ 48-49. Not long thereafter, on October 2, 2023, Mr. Perry received a written reprimand that focused on a response he had given during the public comment section of a City Council meeting. *Id.* ¶¶ 50-51. This letter, which was written by the then-Mayor of the City of Orofino, accused Mr. Perry of reacting with "rudeness and sarcasm" during the meeting. 10/2/2023 Reprimand (Dkt. 1-2, pp. 99). It read, in relevant part:

> On August 16th 2023 we had a meeting to discuss complaints about your attitude and conduct as an employee of the City of Orofino. This was the Brewer complaint to the City Council, and the Jones Arms complaint that came to me directly after the meeting. I felt it was a good meeting, and we discussed you taking de-escalation classes and some other professional development courses through ICRMP. Although the next day discovered you had already taken the recommended classes earlier in the year.
>
> At the September 19th 2023 Council meeting, during the public comment period, when asked a question by the Council, you reacted with rudeness and sarcasm. This is completely inappropriate behavior for a city employee in a public meeting. After the September 19th meeting, I received more complaints about your conduct and behavior toward residents. This is a serious issue, and will not be tolerated.

*Id.*

On October 4, 2023, Mr. Perry wrote a response to the Mayor and City Council addressing the recent complaints about his job performance and attitude. Compl. ¶ 52 (Dkt. 1-2). In this letter, Mr. Perry argued that he had correctly interpreted the building and zoning codes during his interactions with the two individuals – Mr. Jones and Mr. Brewer – who had filed complaints against him in August. 10/4/2023 Response Letter (Dkt. 1-2, pp. 101-102). He admitted, however, that he "gave an unprofessional response to the mayor and council" during the September 19, 2023 meeting and promised "that a comment like that would not happen again." *Id.* Lastly, he expressed frustration that he did not have details about any of the other

**MEMORANDUM DECISION AND ORDER** – **PAGE 2**

complaints that had been lodged against him and could not, consequently, defend himself from these accusations. *Id.* Mr. Perry concluded:

> I'm in a position where enforcing city code and zoning codes is difficult and there is always disagreement and different interpretations of codes. I am disappointed that after 15 years of being in this position that Mayor Simmons and Administrator Smathers believes [sic] I would retaliate against someone who has made a complaint against me when there is no history of such behavior from me.

*Id.* He asked that a copy of his letter be placed in his personnel file.

Approximately five months later, on March 11, 2024, Mr. Perry was terminated from his job with the City of Orofino. Compl. ¶¶ 27-28, 53 (Dkt. 1-2). Mr. Perry was provided a "Notice of Termination of Employment" that detailed the reasons the City was firing him. *Id.* This letter was signed by the City Administrator. It stated:

> The City of Orofino is hereby terminating your employment effective immediately.
>
> Your last written warning for unprofessional conduct, dated October 2, 2023, stated that "[f]urther complaints of this nature would result in further disciplinary action up to and including termination." After more verbal complaints, including fears of retaliation by the public, the City has decided to terminate your employment. At this time, you are not entitled to a name-clearing hearing, because this termination is based on job performance and unprofessional conduct.

Termination Letter (Dkt. 1-2, p. 67). This letter was placed in Plaintiff's personnel file. Compl. ¶ 248 (Dkt. 1-2). Mr. Perry also alleges that the City Administrator who signed the letter of termination "verbally published" the content of the letter "to community members of the City of Orofino." *Id.* ¶ 251.

The day after his termination, Mr. Perry submitted a written request for a name-clearing hearing. *Id.* ¶ 235. But this request was ultimately denied. *Id.* ¶ 245.

Sometime during this period, the City Administrator solicited a letter of complaint concerning Mr. Perry's performance from a community member named Brian MacArthur. *Id.* ¶

223.  Like the complaints filed by community members in August, the MacArthur letter accuses Plaintiff of misinterpreting the building code and being "argumentative," "unpleasant," "angry," and generally "difficult to deal with."  MacArthur Letter (Dkt. 1-2, pp. 118-119).  This letter was placed in Plaintiff's personnel file after his termination.  *Id.* ¶ 225.

On November 4, 2024, Plaintiff filed a complaint in state court challenging his termination, the City's denial of his request for a name-clearing hearing, and the inclusion of the MacArthur Letter in his personnel file.  *See generally id.*  Plaintiff's complaint alleges ten state law claims and one Fourteenth Amendment due process claim.  *Id.*  On December 12, 2024, Defendants removed the case to federal court.  (Dkt. 1.)  Four months later, Defendants moved for judgment on the pleadings.  (Dkt. 16.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  The standard for evaluating a Rule 12(c) motion is functionally identical to the analysis under Rule 12(b)(6).  *Chavez v. United States*, 683 F.3d 1102, 1108, (9th Cir. 2012).  First, the court accepts as true all well-pleaded factual allegations in the complaint, disregarding any unsupported legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Next, having identified the adequately pleaded facts, the Court "determine[s] whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  In other words, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678; *see also Chavez*, 683 F.3d at 1108.

## DISCUSSION

Plaintiff's Complaint contains a single federal claim[1] that is titled "Violation of Plaintiff's Due Process Rights under the Fourteenth Amendment to the United States Constitution." Compl. ¶¶ 277-296 (Dkt. 1-2). The allegations in support of this claim focus on Defendants' refusal to provide Plaintiff with a name-clearing hearing. *Id.* Defendants charitably construe this claim as alleging both a protected property interest in continued employment under I.C. § 50-206 as well as a liberty interest in a name-clearing hearing. D.'s Mtn. at 7, 17 (Dkt. 17). The Court is not convinced that the Complaint contains a due process property interest claim.

Plaintiff, however, not only defends this claim in his response, he seeks to expand it. Specifically, Plaintiff argues that the at-will nature of his employment was limited by virtue of (i) his status as an appointive officer, (ii) a 2020 amendment to the Orofino City Code, and (iii) his 2008 offer of appointment. Rsp. at 5-11, 17 (Dkt. 18-1). The latter two theories of relief are not grounded in the Complaint. To support these theories, Plaintiff has attached evidence to his response and has invited the Court to convert the motion for judgment on the pleadings to a motion for summary judgment. *See generally* Rsp. to Mtn. Strike (Dkt. 22). In so doing, Plaintiff effectively seeks to add new claims to his Complaint, without filing a formal motion to amend. This is not best practice. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (a plaintiff may not amend the pleadings by raising a new legal theory on a motion for summary judgment) and *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment

---

[1] Plaintiff asserts sexual harassment claims, but he has elected to bring these claims under the employment manual not Title VII.

**MEMORANDUM DECISION AND ORDER** – **PAGE 5**

motion is insufficient to present the claim to the district court"), o*verruled on other grounds by*

*Apache Stronghold v. United States*, 101 F.4th 1036, 1043 (9th Cir. 2024) (en banc).  Generally,

to obtain relief on a claim, that claim must be properly alleged in the complaint.

In this case, however, requiring Plaintiff to formally move to amend the Complaint

before evaluating the legal sufficiency of his Fourteenth Amendment claims would not serve any

appreciable purpose, except further delay.  As Defendants point out, the documentary evidence

that Plaintiff has submitted refutes the claim that he had any property interest in his continued

employment and adds little, if anything, to his due process liberty claim.  The Court,

consequently, finds that the most prudential course is to (i) consider Plaintiff's evidence as if

Plaintiff had sought to incorporate this information into the Complaint via a timely motion to

amend and (ii) explain why this evidence does not salvage Plaintiff's only two federal claims.

*See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (while a

court should "freely give leave to amend," amendment is properly denied if it would be futile);

*see also* Fed. R. Civ. P. 1 (the federal rules of civil procedure must "be construed, administered,

and employed by the court and the parties to secure the just, speedy, and inexpensive

determination of every action and proceeding").

### A.  Plaintiff's Due Process Property Interest Claim

The Supreme Court has held that terminated public employees are entitled to procedural

due process in certain circumstances.  *Gilbert v. Homar*, 520 U.S. 924, 928 (1997).  There are

two basic elements to such a claim.  First, the employee must have a constitutionally protected

property interest in continued employment.  *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d

963, 967-968 (9th Cir. 2011).  Second, the employer must have denied the employee the process

that is due.  *Id.*

The first element is at issue here.  This element focuses on the employee's employment status.  To have a protected property interest in a job, a plaintiff must have a legitimate claim of entitlement to the benefit of continued employment under applicable state law.  *Matthews v. Oregon State Bd. of Higher Educ.*, 220 F.3d 1165, 1168 (9th Cir. 2000) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) and *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756-757 (2005).  The answer to this question depends on whether an employee is or is not at-will.  *Lawson v. Umatilla County*, 139 F.3d 690, 691-692 (9th Cir. 1998) ("Under the federal constitution, at-will employees possess no protected property rights and therefore are not entitled to due process before being terminated.").

Here, Plaintiff appears to be arguing that his status as an appointive officer under I.C. §§ 50-204 and 50-206[2] gave him a property interest in continued employment.  Rsp. at 8 (Dkt. 18-1) (arguing that the disclaimers in the employment manual are not controlling because Plaintiff was appointed to his position after a vote by the council).  This argument conflicts with binding Idaho law.  In *Boudreau v. City of Wendell*, 147 Idaho 609 (Idaho 2009), a city clerk argued that she had been wrongly terminated without notice or hearing in violation of the city's employment manual.  *Id.* at 610.  The Idaho Supreme Court held that this claim failed as a matter of law because city clerks are appointive officers who are "at-will and subject to removal without cause" under the plain language of I.C. § 50-206, regardless of any promises that might be made in a city's employment manual.  *Id.* at 612.  To explain this conclusion, the Supreme Court noted that:

> [I]n Idaho local governments cannot override statutes enacted by the legislature.

---

[2] I.C. § 50-206 provides two procedural mechanisms for the removal of an appointive officer: (i) the officer may be removed by the mayor for any cause as long as the majority of the city council votes to confirm the removal or (ii) the city council may "upon their own initiative remove any appointive officer" by a unanimous vote.

> Thus, once the legislature determined that a municipal appointive officer is at-will and provided for the removal of such an officer without notice or a hearing, the municipality could not alter that status by adopting a Personnel Manual.

*Id.* (cleaned up).  In this case, the parties disagree about whether Plaintiff was an appointive officer under I.C. § 50-206.  Plaintiff is vehement that he was, while Defendants insist, he was not.  The Court need not resolve this novel issue of state law.

If Plaintiff is correct that he was an appointive officer, he was an at-will employee under *Boudreau* and is precluded from bringing a federal due process claim asserting a continued interest in his employment.  *Lawson*, 139 F.3d at 691-692.

If Defendants are correct, however, and Plaintiff is not an appointive officer, he was an at-will employee under normal principles of state employment law.  In Idaho, employment is presumptively "at-will."  *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 240 (Idaho 2005).  To displace this presumption, an employee must show that the employer expressly or impliedly agreed to a contract term that (i) specifies the duration of employment or (ii) limits the reasons for which the employee may be terminated.  *Id.*  An implied agreement exists when "from all the circumstances surrounding the relationship," a reasonable person could conclude that both parties intended a limitation on discharge.  *Id.*  For example, "[s]tatements made and policies promulgated by the employer, whether in an employment manual or otherwise, may give rise to . . . an implied-in-fact [employment] agreement."  *Bollinger v. Fall River Rural Elec. Co-op.*, 152 Idaho 632, 638 (Idaho 2012).

Plaintiff identifies two documents that he believes impliedly limited the City's ability to fire him at-will: (i) a 2020 amendment to the Orofino City Code and (ii) his 2008 offer of appointment.  Rsp. at 5-10 (Dkt. 18-1).  Both fail as a matter of law.

First, Plaintiff claims that the 2020 amendments to the Orofino City Code should be

interpreted as imposing some "significant," but unspecified "limitations on the employment-at-will relationship." Rsp. at 6 (Dkt. 18-1). No reasonable juror could adopt this interpretation of the relevant Ordinance. As Plaintiff acknowledges, the Ordinance notes that it is intended to "establish uniformity" with the 2019 City of Orofino Personnel Policy and Procedure Manual, which was the Manual in effect at the time of Plaintiff's termination. *See* Ordinance No. 810, Section 1 (Dkt. 18-13) and Compl. ¶ 40 (Dkt. 1-2). The 2019 Manual, in turn, expressly negates any intention on the part of the City to create an employment contract and clearly labels all City employees as at-will employees. *See* 2019 Personnel Policy and Procedure Manual at 4 (Dkt. 1-2, pp. 71-97) (stressing that "[a]ll employees of the City are at-will," that the employment manual "is not contract of employment," that the city can change the terms of the employment manual "at any time"). These are the types of warnings that the Idaho Supreme Court has treated as sufficient, as a matter of law, to preserve the at-will employment relationship. *See Nix v. Elmore County*, 158 Idaho 310, 317 (Idaho 2015); *see also Bollinger*, 152 Idaho at 639 (a seniority policy that expressly stated that it did not constitute a contract between the employer and employee could not give rise to an implied-in-fact employment agreement).

While the 2020 Ordinance does not restate these disclaimers, it confirms that "the city is an At-Will employer." *See* Ordinance No. 810, Section 4.C.13 (Dkt. 18-13). In other words, the Ordinance aligns itself with a Manual that repudiates any intention of creating an implied employment contract, and the Ordinance expressly confirms that all City employees are at-will employees. Plaintiff does not point to any provisions of the Ordinance or resulting City Code that could cause a reasonable person to question the City's commitment to at-will employment in the face of these clear statements.[3] *See Bollinger*, 152 Idaho at 638 (to overcome the

---

[3] The only language from the Ordinance that Plaintiff cites to support his position is from the

presumption of at-will employment, "statements must be more than vague statements of opinion

or prediction, and policies must manifest an intent that they become part of the employment

agreement").

     The second piece of evidence that Plaintiff cites to support his claim of entitlement to

continued employment is his 2008 offer of appointment.  In relevant part, this letter reads:

> The first twelve (12) months of employment is considered a "Training Period."
> Upon successful completion of your first six months of employment you will
> receive a 2 ½% step increase in pay.  Upon competition of your twelve month
> Training Period you will receive an additional step increase.  At any time during
> your Training Period, the city reserves the right to terminate your employment
> without cause.  You will need to review the City of Orofino Personnel Policies
> and Procedures Manal for full details and understanding of the regulations
> governing employment with the city.

9/10/2008 Letter (Dkt. 18-3).  Statements such as these can, in some circumstances, give rise to

an implied-in-fact employment contract.  *See Hollist v. Madison Cnty.,* No. 4:13-CV-00139-

BLW, 2014 WL 5089941, at *8 (D. Idaho Oct. 9, 2014).  The problem here is that even if the

City of Orofino had a "for cause" employment policy in 2008, when Plaintiff was first appointed,

the City changed that policy years before Plaintiff's termination.

     Specifically, Plaintiff alleges that the City revised and updated its employment manual

"throughout the many years during which Plaintiff served Building and Code Enforcement

---

section that sets forth the City's "purpose" for amending the City Code. Rsp. at 6 (Dkt. 18-1).
This section is prefatory in nature.  It does not impose any specific duties on the City or entitle
City employees to any specific protections.  *See Idaho Com. on Human Rights v. Campbell*, 95
Idaho 215, 217 (Idaho 1973) ("By its nature a preamble is prefatory and declarative of public
policy. Since the preamble is indicative of the legislative purpose only, it is not conclusive nor
does it confer or enlarge powers.").  It simply expresses a belief that the amendments to the City
Code would help promote "a system of personnel administration" that followed various "merit"
principles.  *See* Ordinance No. 810, Section 1 (Dkt. 18-13).  Vague statements of opinion, such
as these, are not sufficient to create an implied employment contract.  *Bollinger*, 152 Idaho at
638 (where an employer had an express policy of at-will employment, vague statements of
opinion did not give rise to an implied-in-fact employment agreement).

**MEMORANDUM DECISION AND ORDER – PAGE 10**

Official." Compl. ¶ 39 (Dkt. 1-2). Plaintiff avers that he "read, reviewed and followed" all of these revisions. *Id.* ¶ 44. And he asserts that the "City of Orofino Personnel Policy and Procedure Manual, which was effective at the time when [he] was terminated" was a version of the Manual that treated all City employees as at-will employees. *Id.* ¶ 40 and 2019 Personnel Policy and Procedure Manual at 4 (Dkt. 1-2, pp. 71-97).

In circumstances such as these, the Idaho Supreme Court has held that the Manual in effect at the time of termination, not the Manual in effect at the time of hiring, dictates the employee's employment status. *Bollinger*, 152 Idaho at 638. This is because, in the absence of a written employment contract, employers are permitted to "unilaterally change" the implied terms of the employment contract, including any terms set forth in an employment manual, by "providing reasonable notice of the change to [the] affected employees." *Id.* If the employees continue to work following receipt of such notice, that is considered acceptance of the changes to the terms of employment. *Id.* The facts of *Bollinger* are illustrative.

In *Bollinger*, it was undisputed that the defendant-employer "maintained a for-cause employment policy at the time of [the plaintiff's] hire." *Id.* Sometime during the twenty-plus years of plaintiff's employment, the defendant "effectively adopted a change to that policy" by issuing a new employment manual clearly stating its "intent to create an at-will employment relationship with all employees not covered by a separate, written employment agreement." *Id.* This manual was "uniformly distributed to all employees, including [the plaintiff,] via email." *Id.* Because Plaintiff admitted that she had received this email, the Idaho Supreme Court rejected the plaintiff's arguments that the original for-cause policy "somehow" remained in effect. *Id.* at 638-639.

The same reasoning applies here. Plaintiff personally signed a complaint attesting that he

read, reviewed, and complied with the 2019 revisions to the City of Orofino's personnel manual while he was working for the City of Orofino and that this was the version of the Manual in effect at the time of his termination.  Compl. ¶¶ 40-47 (Dkt. 1-2).  While he has since changed litigation strategy and now argues that there is a "factual question . . . as to which version of the Manual defines the employment agreement," his arguments that some other, unspecified manual controls and that this manual *may* have modified the at-will nature of his employment relationship are purely conclusory.  Rsp. at 17 (Dkt. 18-1).  The undisputed evidence that Plaintiff has presented to the Court confirms that he signed several "acknowledgements of receipt" of revised versions of the personnel manual during his employment with the City, including an August 20, 2019 acknowledgment which specifically states, "I understand that I am an at-will employee of the City."  Rsp. at 11 (Dkt. 18-1); s*ee* Acknowledgments (Dkts. 18-8, 18-9, 18-10, and 18-11).

The Court is not persuaded by Plaintiff's claim that the two blank spaces on the 2019 acknowledgment rendered it defective.[4]  The validity of this form, however, is not determinative of Plaintiff's employment status.  The key question under *Bollinger* is whether Plaintiff received "reasonable notice of the change" to the employment manual, not whether he signed a form acknowledging the changes.  *Bollinger*, 152 Idaho at 638-639 (receipt of an email constituted reasonable notice).  Here, like in *Bollinger*, it is undisputed that Plaintiff continued working for the City after receiving a copy of the 2019 revisions to the employment manual.  Compl. ¶¶ 40-47 (Dkt. 1-2).  Indeed, Plaintiff has sworn that he had read, reviewed, and complied with the 2019 personnel manual prior to his termination.  *Id.*  These admissions foreclose any claim that

---

[4] The information that should have been written in these spaces (the date the Manual was adopted and Plaintiff's name) appear on other lines on the form.

Plaintiff was not an at-will employee. *Bollinger*, 152 Idaho at 638-639. The Court, accordingly, will dismiss Plaintiff's due process property interest claim with prejudice.

**B. Plaintiff's Due Process Liberty Claim**

The only other federal claim that Plaintiff has alleged is a due process liberty claim challenging Defendants' refusal to provide him with a name-clearing hearing. In the context of public employment, the Supreme Court has recognized that a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for termination is publicly disclosed. *Roth*, 408 U.S. at 573. There are five basic elements of such a claim: (i) the employer has charged the employee with something sufficiently stigmatizing that it implicates the employee's Fourteenth Amendment liberty interests, (ii) the accuracy of the charge is contested, (iii) there is some public disclosure of the charge, (iv) the charge is made in connection with termination of employment, and (v) the employer has denied the employee's request for a name-clearing hearing. *See Tibbetts v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009).

Defendants argue that Plaintiff's claim founders on the first of these elements, because the reasons the City provided for terminated Plaintiff's employment related to Plaintiff's professionalism and ability to get along with others, not his honesty, morality, or criminality. D.'s Mtn. at 19-20 (Dkt. 17). The Court agrees.

To have a constitutional right to a name-clearing hearing, a terminated public employee must have suffered stigma that is "severe and genuinely debilitating." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992). "In other words, the stigma must seriously damage a person's reputation or significantly foreclose his freedom to take advantage of other employment opportunities." *Id.* This is a higher standard than it appears at first glance. As the Ninth Circuit

has explained:

> Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character. But not every dismissal assumes a constitutional magnitude.

*Gray v. Union County Intermediate Education Dist.*, 520 F.2d 803, 806 (9th Cir. 1975). An employer is only required to provide a name-clearing hearing when the employer accuses a terminated employee of something so egregious that the employee's ability to earn a living is crippled. *Hyland*, 972 F.2d at 1142; *see also Gray,* 520 F.2d at 806 ("[t]he concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities"). As the Ninth Circuit has oft explained, this standard draws a line between accusations that "may reduce economic rewards and diminish prestige," and accusations that "exclude one permanently from [a] profession or trade or interrupt employment for a protracted period of time." *Roley v. Pierce County Fire Protection Dist. No. 4*, 869 F.2d 491, 496 (9th Cir. 1989). Only the latter implicate the Fourteenth Amendment. *Hyland*, 972 F.2d at 1142.

In applying this standard, the Ninth Circuit looks to "the nature of the charges and not the actual consequences of them to determine whether they implicate a liberty interest." *Roley*, 869 F.2d at 495. Accusations of dishonesty or moral turpitude, for example, will give rise to a liberty interest. *Id.* at 495. But charges of incompetence, poor job performance, and inability to get along with others will not. *Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991); *see also Tibbetts*, 567 F.3d at 537 ("only the stigma of dishonesty or moral turpitude gives rise to a liberty interest; charges of incompetence do not") (cleaned up).

In this case, Plaintiff was given a written reprimand in October 2023 for having a bad attitude and being rude and sarcastic. 10/2/2023 Reprimand (Dkt. 1-2, pp. 99). Five months

**MEMORANDUM DECISION AND ORDER** – PAGE 14

later, in March 2024, his supervisor wrote a termination letter explaining that the City had received "more verbal complaints, including fears of retaliation by the public." Termination Letter (Dkt. 1-2, p. 67). The termination letter explained that the City was firing Plaintiff "based on job performance and unprofessional conduct." *Id.* To support these claims, the City solicited a letter from a contractor accusing Plaintiff of misinterpreting the building code and interacting with construction firms in an angry and argumentative manner. MacArthur Letter (Dkt. 1-2, pp. 118-119). Plaintiff does not cite to any case law or make any argument to support the conclusion that these accusations were sufficiently stigmatizing under Ninth Circuit law to give rise to a constitutional claim.

Instead, Plaintiff argues that it would be premature for the Court to assess the level of stigma before discovery has occurred. Rsp. at 19 (Dkt. 18-1). This argument is without merit. While the level of stigma imposed by an employer's statements is considered a question of fact, the Ninth Circuit often adjudicates whether an employer's statements are sufficiently stigmatizing to give rise to a Fourteenth Amendment claims *as a matter of law*. *See, e.g., Hyland*, 972 F.2d at 1142; *see also* cases cited *infra* p 16. In cases, like this one, where the allegedly stigmatizing statements have been incorporated directly into the complaint, there is no reason to delay such a ruling until summary judgment. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (dismissal on the pleadings can be predicated on "a lack of cognizable legal theory").

The Court has carefully read the Notice of Termination and related documents. The charges these documents lodge against Plaintiff are unflattering. Like in *Gray* and *Hyland*, however, they are not so egregious that Plaintiff's liberty interests could be said to be implicated. Plaintiff's Notice of Termination indicates that he is being terminated for "job performance" and

unprofessional interactions with members of the public.  Neither the letter nor the reprimands or complaints referenced therein accuse Plaintiff of any criminal acts, dishonesty, or immorality.

The closest the Notice of Termination comes to making such allegations is expressing concern that some, unidentified members of public felt that Plaintiff would "retaliate" against them if they challenged or complained about his work.  The Ninth Circuit, however, has repeatedly held that charges of interpersonal conflict *with other adults* are not sufficiently stigmatizing to trigger constitutional protections.  *See Roley*, 869 F.2d at 495 (allegations of poor management, engaging in conduct that resulted in a grievance being filed, and antagonism toward the employer did not give rise to a liberty interest); *Portman v. County of Santa Clara*, 995 F.2d 898, 907-908 (9th Cir. 1993) (a letter accusing a chief public defender of "passivity," "defensiveness," and "disinterest" in reporting to his board of supervisors focused on "lack of competence, and not on dishonesty or moral turpitude"); and *Wheaton*, 931 F.2d at 615 (9th Cir. 1991) (allegations that a manager showed "aggressive resistance" to a test program did not implicate the manager's liberty interests).  This is true even when the employer accuses the employee of interpersonal behavior that most individuals would find offensive and unacceptable, such as shouting profanities at a co-worker or being openly hostile and aggressive towards a boss.  *See Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1096 (9th Cir. 1981) (an attorney who was fired for shouting profanities at and using abusive language towards a secretary was not entitled to a name-clearing hearing because these accusations went to his ability to get along with others, not his morality); *Gray*, 520 F.2d at 806 (public statements that teacher was insubordinate, incompetent, aggressive, and hostile toward authority did not violate a liberty interest because they did not concern dishonesty or immorality).

The cases where the Ninth Circuit has allowed a Fourteenth Amendment due process

claim to proceed to trial, by contrast, have all involved allegations of dishonesty or allegations of some other serious ethical violation, such as child abuse. *Compare Tibbetts*, 567 F.3d at 537 (there was sufficient evidence of stigma to survive summary judgment where the governor issued press releases indicating that staff changes were made in order to ensure a department was being run ethically, accountably, honestly, and transparently); *Campanelli v. Bockrath*, 100 F.3d 1476, 1480-81 (9th Cir. 1995) (coach fired for deliberately inflicting verbal and psychological abuse on children met stigma requirement); and *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 778 & n.7 (9th Cir. 1982) (school teacher accused of staring at and making sexually inappropriate comments to minor female students had liberty interest in his reputation) with *Hyland*, 972 F.2d at 1142 (accusing a probation department volunteer of improperly accessing confidential files was "insufficiently egregious to activate the protections of the Due Process Clause").

These cases foreclose Plaintiff's due process liberty claim as a matter of law. The Court will dismiss this claim with prejudice.

### C.  Leave to Amend

When a complaint is subject to dismissal, unless it is apparent that allowing amendment would be futile, the court will ordinarily grant leave to amend. *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992); *see also Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (dismissal with prejudice and without leave to amend is not appropriate unless it is clear "that the complaint could not be saved by amendment"). In this case, Plaintiff has not moved to amend, however, and the Court doubts an amendment would be successful.

Two factors lead the Court to this conclusion. First, the facts have been well-developed. Plaintiff has attached extensive documentation to his Complaint. He has also submitted additional evidence in opposition to Defendants' motion for judgment on the pleadings, which

the Court has reviewed in the same manner as if Plaintiff had filed a timely motion to amend incorporating the contested evidence in a proposed amended complaint.  In short, Plaintiff has already had one opportunity to effectively amend the complaint through the presentation of additional evidence.

Second, Plaintiff's federal claims suffer from fundamental legal defects.  Binding law indicates that he was an at-will employee at the time of his termination and the published statements on which he bases his due process liberty claim are not the kind of charges that are actionable under Ninth Circuit law.  In circumstances such as these, the Court is not required to invite an amendment.  *See, e.g.*, *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment).  The Court, accordingly, will dismiss Plaintiff's federal claims without leave to amend.

### D.  Plaintiff's State Law Claims

Defendants also move for judgment on the pleadings on Plaintiff's state law claims.  The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

Where, as here, all of the plaintiff's federal claims are eliminated before trial and there is no diversity jurisdiction, the Court has a duty to consider whether it should continue exercising supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367(c)(3); *Acri v. Varian Assocs.*, 114 F.3d 999, 1000-1001 (9th Cir. 1997) ("exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims . . . is a responsibility that district courts are duty-bound to take seriously").  The Ninth Circuit has identified four factors that guide this analysis: "economy, convenience, fairness, and comity."  *Id.* at 1001.  Where all the federal claims are dismissed before trial, "[t]he Supreme Court has stated, and [the Ninth

Circuit has] often repeated" that these factors will point strongly towards declining jurisdiction. *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, n.7 (1988).

That is exactly the case here. First, and most importantly, tenets of federalism and comity dictate that Idaho judges should be the primary arbiters of state law issues. Here, Plaintiff has raised a novel issue of state law: whether the City of Orofino's Building and Code Enforcement Official is an appointive officer under Idaho law. Declining supplemental jurisdiction over this and the other state law claims will "promote justice between the parties, by procuring for them a surer-footed reading of applicable [state] law." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Second, Plaintiff originally filed this case in state court. Remanding preserves that choice of forum for the state law claims. *See Centeno v. City of Fresno,* No. 116-cv-00653, 2019 WL 991049, at *4 (E.D. Cal. Feb. 28, 2019) (collecting cases where the district court remanded pendant state law claims to respect the plaintiff's choice of forum).

Third, the procedural posture of the case weighs in favor of declining jurisdiction. As things currently stand, the case is in the middle of discovery. There have been no trial rulings or trial preparation.

Finally, no unfairness will result from allowing an Idaho court to rule on the Idaho claims. Both parties have local counsel who can litigate the case in state court. And, the effort the parties have expended briefing Defendants' motion for judgment on the pleadings on the state law claims is not wasted; it can be easily applied to state court. For these reasons, the Court will decline supplemental jurisdiction over the state law claims and remand them back to state court.

**MEMORANDUM DECISION AND ORDER – PAGE 19**

**<u>ORDER</u>**

IT IS HEREBY ORDERED that:

1.  Defendants' Motion for Judgment on the Pleadings (Dkt. 16) is GRANTED in part as

    follows:

    a.  Plaintiff's due process property claim will be dismissed with prejudice.

    b.  Plaintiff's due process liberty claim will be dismissed with prejudice

2.  Plaintiff's state law claims will be remanded back to state court.

3.  Defendants' Motion to Strike (Dkt. 20) is DENIED.

DATED: August 05, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge